571 So.2d 320 (1989)
Michael R. PARDUE
v.
STATE.
3 Div. 997.
Court of Criminal Appeals of Alabama.
September 29, 1989.
Rehearing Denied November 17, 1989.
*322 Everette A. Price, Jr., Brewton, for appellant.
Don Siegelman, Atty. Gen., and Mary Elizabeth Culberson, Asst. Atty. Gen., for appellee.
BOWEN, Judge.
Michael R. Pardue was convicted on all counts of a four-count indictment charging escape in the second degree, burglary in the first degree, theft of property in the first degree, and theft of property in the second degree. He was sentenced, as a habitual offender to 10 years on the escape conviction, life without parole on the burglary conviction, life on the first degree theft conviction, and 20 years on the second degree theft conviction. In his brief on appeal,[1] the defendant's appointed counsel raised 21 issues for review. His brief is little more than a "grocery list" of alleged errors, as 13 of those issues are neither argued nor supported with citations to authority.
Citing Vinzant v. State, 462 So.2d 1037 (Ala.Cr.App.1984), the attorney general contends that the defendant has waived 13 issues because he has cited no legal authority for those particular issues. If we accept his argument and hold that the defendant has waived the issues for which he has cited no legal authority, under the facts and circumstances of this particular case, we are absolutely compelled to the inescapable conclusion that the defendant has been denied his constitutional right to the effective assistance of counsel on appeal. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Annot. 15 A.L.R. 4th 582 (1982). In order to avoid that result, we will not view any argument raised in brief as having been waived on appeal. However, we will not address every issue raised by the defendant for, after review, we have determined a number of those issues to be frivolous and totally without merit. We now address those issues which warrant our attention.
Pardue was an inmate assigned to work under the supervision of the livestock managers of the prison farm at G.K. Fountain Correctional Center. On March 31, 1987, he left his assigned work area on horseback and rode to a residence 2½ miles south of the prison. The house was owned by the State of Alabama and was used as the residence of Fountain Assistant Warden Arnold Holt.
Pardue broke into the house, took a .357 magnum pistol, a set of car keys, and Warden Holt's 1984 Chevrolet Corvette automobile. A short time later, the car ran out of gas and Pardue stopped at a service station. He traded the pistol for gas money, *323 and drove away. He was apprehended later the same day and was returned to the prison, where he gave a full confession. In his confession, Pardue stated the following:
"I rode up to the Holt house and didn't see Mrs. Holt's car. I knew that she always went and got the kids and I knew she was gone because it was about 2:55 p.m. at the time.... I took the pistol for the money. I had no plans to take one until I saw it."
At trial, a number of correctional employees testified to Pardue's good conduct and work record. Pardue's defense was that he escaped due to the mental anguish and anxiety created when he was transferred from the Trusty Barracks (formerly the Escambia Work Center) to Fountain Correctional Center and because he had been informed that his parole was going to be denied. While he was at the Trusty Barracks, Pardue had been granted a weekly eight-hour pass to visit his wife in the community. After he was transferred to Fountain, he was not given that privilege even though he still maintained his job working with cattle and horses at the state farm.

I
The defendant claims that the court erred by denying his challenge for cause to four prospective jurors who were related to employees of the Department of Corrections. He first challenged two jurors related to correctional officer Jessie English. English was one of the defendant's immediate supervisors and the affiant on the warrant for defendant's arrest for escape. One of the jurors was English's son-in-law and the other juror was the aunt by marriage of English's son. Defendant also challenged two additional jurors whose husbands were employed at Fountain Correctional Center but who, apparently, had no direct connection with the prosecution of these offenses.
Section 12-16-150(4), Code of Alabama 1975, provides that it is a ground of challenge for cause that a prospective juror "is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, ... either with the defendant or with the prosecutor or the person alleged to be injured." The "person alleged to be injured" in this case was assistant warden Arnold Holt. None of the challenged jurors was related to him. The Department of Corrections was not a "party" to the criminal prosecution here, see Nettles v. State, 435 So.2d 146, 149 (Ala.Cr.App.1983), Ex parte Nettles, 435 So.2d 151 (Ala.1983) (fact that veniremen were members or employees of School Board did not constitute a valid ground for challenge for cause in prosecution for receiving stolen meat, the property of the School Board), and employment of a juror by the same entity that employed the victim does not automatically disqualify the juror for cause, Carlton v. State, 415 So.2d 1241 (Ala.Cr.App.1982). See also Beasley v. State, 337 So.2d 80 (Ala.Cr.App.1976) (fact that juror was a professor at college attended by victim did not constitute ground of challenge for cause).
"In a prosecution for first-degree murder while serving a life sentence, which involved a killing after the defendant had escaped from prison, the trial court properly disallowed a challenge for cause to a prospective juror who was a retired prison employee. Thigpen v. State, 355 So.2d 392, 398 (Ala.Cr.App.), affirmed, 355 So.2d 400 (Ala.1977). See also Glenn v. State, 395 So.2d 102, 107 (Ala. Cr.App.), cert. denied, Ex parte Glenn, 395 So.2d 110 (Ala.1981) (In prosecution for assault with intent to murder power company employee, trial judge did not abuse his discretion in overruling defendant's challenge for cause of juror who was also employed by the power company, in that such employment, when juror did not know assaulted party, did not prima facie indicate interest or bias on the part of the juror)." Nettles v. State, 435 So.2d at 149.
To justify a challenge for cause there must be a statutory basis or some matter which "imports absolute bias or favor" and leaves nothing to the discretion of the trial court. Wyatt v. State, 36 Ala. App. 125, 139, 57 So.2d 350 (1951), cert. denied, 257 Ala. 90, 57 So.2d 366 (1952). *324 "Because a prospective juror is engaged in a particular business or occupation in no way imports absolute bias on his part, and falls far short of reasonably creating any disqualification." Finley v. State, 36 Ala. App. 56, 52 So.2d 167 (1951). See also Johnson v. State, 36 Ala.App. 203-204, 54 So.2d 84 (1951) (jurors in case involving theft of a bull not disqualified because they were members of Cattlemen's Association); Nettles v. State, supra, at 150 (juror who was third cousin of arresting officer and main witness for the prosecution was not due to be removed for cause). Moore v. State, 488 So.2d 27, 32 (Ala.Cr.App.1986) (juror married to uncle of arresting officer not subject to challenge for cause).
Here, upon learning of the relationship of the four challenged jurors to employees of the Department of Corrections, the court inquired whether there were any venirepersons whose relationship "would ... in any way affect [their] ability to render a fair and impartial verdict in this case." No prospective juror responded.
"Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence not withstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge." Barbee v. State, 395 So.2d 1128, at 1130-31 (Ala.Cr.App. 1981).
Because there were no statutory grounds in the instant case upon which to base a challenge for cause, and there was no indication that any of the challenged jurors entertained absolute bias or favor, the court acted within its discretion in denying the challenge for cause. Moore v. State, 488 So.2d at 32.

II
The defendant contends that the trial court erred by denying his motion for a psychological examination. The defendant filed a pro se "Motion for Pretrial Sanity Hearing and/or Psychological Evaluation" 4½ months before trial. It was continued and never heard or ruled on. Then, immediately before trial, the following occurred:
"MR. PRICE [defense counsel]: There are certain outstanding motions pending before the Court that have been filed in this case primarily by the Defendant, and that we have asked that the Court rule on those motions before we proceed or during this trial for the record.
"THE COURT: The Court's ruling is that any outstanding motions are taken under advisement by the Court and any motions that have been filed by the Defendant and which have not been adopted by his attorney, the Court treats those as not having been filed. They are not of record as far as the Court is concerned. If you find that there is a particular motion that has been filed by the Defendant that has particular merit, I will at least consider it sometime during the trial. All the Court is saying is I am not closing the door on reconsidering my ruling."
At the close of all the evidence, defense counsel informed the court that he wished, at that time, to adopt the defendant's pro se motion for a sanity evaluation. The court denied the motion.
The failure to request a hearing or a ruling on the motion earlier was not a waiver of the issue of defendant's mental state, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). An accused has the right to establish, even during trial, his incompetency to stand trial. Id.; Pierce v. State, 52 Ala.App. 422, 293 So.2d 483 (1973), cert. quashed, 292 Ala. 745, 293 So.2d 489, suspended and remanded, 57 Ala.App. 633, 330 So.2d 615 (1974). Here, the trial court's ruling was based on evidence presented, not at a separate hearing for this purpose, but during the course of the trial itself. The defendant argues, in effect, that the court would have had "reasonable ground to doubt his sanity," pursuant to § 15-16-21, Code of Alabama 1975, if it had not rejected two items of evidence he offered.
He takes issue, first, with the court's "exclusion" of the following testimony *325 on direct examination of Honorable Michael McInnish, an attorney who had been representing the defendant on another matter:
"Q You were able to then continue to see him on an irregular basis?
"A Yes, sir. I saw his condition and the way he dealt with me deteriorate from one of smiles to one ofI would call it just almost depression.
"Q And did you come to learn that he probably or he had psychological problems, Mr. McInnish?
"MR. KIRKLAND: I object to the form of that question.
"THE COURT: Sustain."
The trial court's sustaining of the State's objection to the form of the question asked Mr. McInnish did not "exclude" McInnish's testimony. The form of the question, "[D]id you come to learn that [the defendant] probably or he had psychological problems ...?" was, in fact, technically improper. It was, at the least, a leading question, and it may also have been objectionable as calling for hearsay or for an opinion the witness was not, without more, qualified to express. In any case, sustaining the objection to the form of the question did not prevent defense counsel from rephrasing his inquiry in order to elicit the proposed testimony according to established rules of evidence.
Generally, in a proceeding to determine whether there are reasonable grounds to doubt a defendant's sanity, the trial court is not restricted to general principles of evidence, Buttram v. State, 338 So.2d 1062, 1064 (Ala.Cr.App.1976), but this relaxation of the rules is based on the fact that the proceeding normally occurs outside the jury's presence. Here, there was no separate determination by the trial court outside the jury's presence; McInnish testified before the jury during the trial as a defense witness. Under the circumstances, the trial court cannot be faulted for adhering more strictly to the accepted rules of evidence.
Moreover, even if McInnish had stated that he "had come to learn" that his client had mental problems, his testimony would not have been entitled to "conclusive effect," Williams v. State, 386 So.2d 506, 510-11 (Ala.Cr.App.1980), and would not have established the defendant's absolute entitlement to a sanity investigation.
McInnish did testify that the defendant was originally a "happy" person but during the course of his representation of the defendant, he noticed that defendant became "depressed." Other defense witnesses testified to basically the same conclusion: defendant had been happy prior to a DOC order reclassifying him and eliminating his weekend passes, but he became "stressed" and "depressed" as a result of his not being able to visit his wife on the weekends outside the prison. This evidence falls far short of establishing a "bona fide doubt" as to defendant's sanity. Waldrop v. State, 459 So.2d 953 (Ala.Cr.App.), aff'd, Ex parte Waldrop, 459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).
Next, the defendant takes issue with the trial court's rejection of a copy of an affidavit by Ms. Marion Shinbaum, State Director of Inmate Classifications, as evidence of defendant's past psychological problems. Ms. Shinbaum's affidavit was prepared in connection with other litigation. She stated, apparently in response to defendant's allegation that he had been denied due process by the prison system, that defendant had been turned down for work release because the requirementsset out in another report"for a level of supervision and continuing psychological care" were not available in a work release setting.
The "other report" is not included in Ms. Shinbaum's affidavit. It is referenced only by defendant's statement, on his 1985 administrative appeal form, that "work release [was] denied based upon Dr. Crum's recommendation for monthly or bi-monthly psychological counselling."
We recognize that in Buttram v. State, 338 So.2d at 1064, this court held that a trial court should not reject evidence bearing on the question of a defendant's sanity, merely because it is in hearsay form, but that broad statement is qualified by the requirement, implicitly recognized in Buttram, *326 that the trial court need not consider the hearsay if there is reason to doubt the relevance, reliability, or authenticity of the evidence. The Buttram court gave, as an example of evidence that should not be rejected out of hand simply because it was hearsay, the "recent report of an eminent physician, a specialist in mental disorders." Id. Here, the trial court was presented with a triple hearsay report relating to a time period two years before the charged offenses and three years before trial. The report related Ms. Shinbaum's conclusion as to the effect of what the defendant claimed Dr. Crum reported. There was no direct statement by Dr. Crum, the individual whose opinion (that defendant needed "continuing psychological care") was relied on to support the motion for a mental examination.
Under the circumstances, had the trial court received the affidavit in evidence, it is clear that he would have been warranted in doubting its relevance (a two-to three-year-old evaluation), its reliability (triple hearsay), and its authenticity (no direct statement by Dr. Crum and no mention of his identity or credentials). In light of the fact that, at the time he ruled, the court had heard all the evidence and had had the opportunity to observe the defendant's reactions and demeanor during the trial, there was no error in the denial of the motion for a mental evaluation.

III
The defendant also filed a pro se "Motion for Exclusion of Involuntary Admissions and Confessions," with a request for a hearing under Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).
The motion alleged that (1) the defendant requested to call his wife and to contact an attorney prior to questioning, but both requests were refused; (2) the defendant was threatened that if he did not cooperate he would never see or talk to his wife again; and (3) the defendant was physically and emotionally exhausted. No hearing on this motion was ever held, and the defendant did not testify to the facts alleged in his motion.
In Jackson v. Denno, the Supreme Court held, "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." Id. at 380, 84 S.Ct. at 1782. A "fair hearing" is a hearing outside the presence of the jury, at which the accused may testify for the limited purpose of the motion without waiving his right not to testify at the trial in chief. See Smith v. State, 554 So.2d 451 (Ala.1989); Duncan v. State, 278 Ala. 145, 165, 176 So.2d 840, 459 (1965). "An accused is entitled to a hearing on the voluntariness of his confession, and the hearing should be conducted outside the presence of the jury if requested. Felder v. State, 470 So.2d 1321 (Ala.Cr. App.1984), aff'd, 470 So.2d 1330 (Ala.1985), vacated by Felder v. Alabama, 474 U.S. 976, 106 S.Ct. 376, 88 L.Ed.2d 330 (1985)." James v. State, 500 So.2d 474, 477 (Ala.Cr. App.1986) (emphasis added).
In the present case, although the defendant's pro se motion requested a hearing, his attorney did not "adopt" that request as the trial court required. (See Part II, supra.) The testimony of the prison officials who recorded the defendant's confession established the standard Miranda and voluntariness predicates. The trial judge, in ruling on the admissibility of the confession, simply had no disputed evidence before him.
Ordinarily, we would not question an attorney's failure to "adopt" his client's pro se motion, his failure to request a suppression hearing, or his failure to put his client on the stand for the limited purpose of disputing the voluntariness of a confession. We would deem these strategy moves not open to question. However, in the present case, we are at a loss to understand how these actions could have been based on a strategic decision not to challenge the voluntariness of the confession when, in fact, counsel raised at trial and on appeal the claimed involuntariness of the defendant's confession.
*327 In any case, the argument that the confession was involuntary is not supported by any evidence, and the trial court's ruling is due to be upheld.

IV
Citing King v. State, 521 So.2d 1360 (Ala.Cr.App.1987), the defendant claims that he was entitled to a jury instruction that his prior convictions could not be considered in determining guilt, but only in assessing his credibility as a witness. In King, however, the accused objected to the court's failure to instruct the jury on that point in its oral charge and he specifically requested additional instructions. Here, defense counsel failed to preserve the issue for review, because he neither objected to the court's oral charge on the subject nor asked for limiting instructions.

V

The Escape Conviction
The defendant argues that the State failed to prove he was "legally incarcerated." Count one of the indictment alleged that Pardue "did escape or attempt to escape from a penal facility, in violation of Section 13A-10-31 of the Code of Alabama."
This count is identical, in pertinent part, to the indictment at issue in Tinsley v. State, 485 So.2d 1249 (Ala.Cr.App.1986). In Tinsley, we observed that "[b]ut for the miscitation of § 13A-10-32, Code of Alabama 1975 (escape in the second degree) the face of [the] indictment appears to charge second degree escape, prohibiting `escape from a penal facility.'" 485 So.2d at 1251. We further held:
"A prima facie case of second degree escape is established by proof that the accused escaped from a penal facility, and the legality of the underlying charge is not an element of the crime, Andrews v. State, 473 So.2d 1211 (Ala.Cr.App. 1985). Furthermore, the `[m]iscitation of a code section does not void an indictment which otherwise states an offense; and, in the absence of a showing of actual prejudice to the defendant, reference to the erroneous code section will be treated as mere surplusage.' Ex parte Bush, 431 So.2d 563, 564 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983)." Id.

The defendant's conviction for escape in the second degree is affirmed.

VI

The Burglary Conviction
Count two of the indictment charged that Pardue "did knowingly and unlawfully enter or remain unlawfully in a dwelling of Arnold and Judy Holt with intent to commit a crime therein, to-wit: Theft of Property, and while effecting entry or while in the dwelling or in immediately flight therefrom, [he] was armed with an explosive or deadly weapon, to-wit: One (1) Smith & Wesson .357 Magnum, in violation of Section 13A-7-5 of the Code of Alabama...."
In Buchannon v. State, 554 So.2d 477 (Ala.Cr.App.1989), this court, all judges concurring, held the following:
"[I]n determining whether a defendant [charged with first degree burglary] is `armed,' a distinction must be made between the perpetrator who equips himself with a weapon prior to the crime and the perpetrator who steals a weapon during the crime. In order for the latter to be `armed,' there must be a showing that the stolen weapon was possessed in `such a manner as to indicate his willingness or present ability to use it as a "weapon"' and not merely as loot from the crime.... The mere showing that the defendant stole a weapon during the course of a burglary or robbery, without more, does not constitute being `armed.' " (Emphasis in original; citations omitted.)
See also Ex parte McCree, 554 So.2d 336 (Ala.1988) (Subsections (4) and (5) of Ala. Code 1975, § 13A-6-3, which enhance the sentence for the commission of a felony involving the use of a firearm or deadly weapon, apply only to the sentencing of those defendants found guilty of a felony whose commission required an intent to or *328 attempt to use a weapon in furtherance of the offense).
It is even more clear here than it was in Buchannon that the defendant possessed the weapon "merely as loot from the crime." The fact that the residence was unoccupied at the time of the break-in presented the defendant with no occasion to brandish the pistol or to use it as a weapon. Furthermore, under the circumstances of this case, the fact that defendant believed the residence was unoccupied negated any intent on his part to use the pistol as a weapon. His confession stated that he "took the pistol for the money" and his actions bear out the truth of that statement. He treated the weapon as "loot" by trading or pawning it to buy gas for the stolen automobile. The State presented no evidence to the contrary.
Since the defendant was not "armed" within the meaning of the first degree burglary statute, the evidence was insufficient to support his conviction of first degree burglary. The double jeopardy clause of the Fifth Amendment prohibits his being retried. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). However, as we stated in Buchannon v. State, supra, "[W]e may remand for proper sentencing if the evidence is sufficient to convict the accused of a lesser included offense." See Ex parte Edwards, 452 So.2d 508 (Ala. 1984); Pack v. State, 461 So.2d 910 (Ala.Cr. App.1984).
Burglary in the third degree is a lesser included offense of burglary in the first degree, as the former may be established by proof of fewer than all the factors required to prove the latter. See Ala.Code 1975, § 13A-1-9(a)(1). "[S]ince the jury returned a verdict on the higher degree, it found the existence of every element of the lesser included offense." Utley v. State, 508 So.2d 287, 288 (Ala.Cr. App.1986). The State's evidence here supported a conviction for third degree burglary. The trial court is, therefore, directed to set aside the defendant's conviction of burglary in the first degree, adjudge him guilty of burglary in the third degree, and sentence him accordingly.

VII

The First Degree Theft Conviction
The defendant claims the State did not prove ownership of the vehicle alleged to have been stolen in count three of the indictment. Assistant warden Arnold Holt testified that the automobile belonged to him. That was sufficient. Alldredge v. State, 431 So.2d 1358 (Ala.Cr.App.1983); Harper v. State, 389 So.2d 184 (Ala.Cr. App.1980).

VIII

The Second Degree Theft Conviction
Count four of the indictment alleged that Pardue "did knowingly obtain or exert unauthorized control over one (1) Smith & Wesson .357 Magnum, the property of Arnold Holt, of the value of $300.00, with the intent to deprive the owner of said property, in violation of Section 13A-8-4 of the Code of Alabama...."
At trial, the State presented no evidence of the value of the .357 magnum pistol alleged to have been stolen. Defendant moved for a judgment of acquittal on the ground that the State's failure to prove the indictment as laid was fatal to the prosecution. Section 13A-8-4 provides in subsection (a) that "The theft of property which exceeds $100.00 in value but does not exceed $1000.00 in value, and which is not taken from the person of another, constitutes theft of property in the second degree." Subsection (d) of the same statute provides that "The theft of a firearm, rifle or shotgun, regardless of its value, constitutes theft of property in the second degree." (Emphasis added.)
In Cauley v. State, 14 Ala.App. 133, 72 So. 271 (1916), the accused made the same argument, in a prosecution for larceny of a cow, that the defendant makes here. We adopt the following reasoning of the Cauley court in holding that the trial court correctly denied the motion for judgment of acquittal here:

*329 "The statute makes the stealing of a cow, regardless of the value of the cow, grand larceny (Code 1907, § 7324), and in such case it is not necessary to allege or prove value (Parker v. State, 111 Ala. 72, 20 South. 641). Therefore, the allegation `of the value of thirty-five dollars,' not being descriptive of the offense, was properly regarded as surplusage, and proof thereof was not necessary. Newsom v. State, 107 Ala. 137, 18 South. 206; McGehee v. State, 52 Ala. 229; State v. Stedman, 7 Port. 495." Cauley v. State, 72 So. at 272 (emphasis added). See also Maxwell v. State, 488 So.2d 517 (Ala.Cr. App.1986).
The defendant also argues that the State did not prove a proper chain of custody for the pistol and thus, he claims, it was due to be excluded as evidence. At trial, Arnold Holt identified the pistol, by its serial number and special hand grips, as the one missing after a burglary of his residence on March 31, 1987. He stated that the pistol was in the "same condition" when it was returned to him as it was prior to the burglary. The service station attendant, who took the pistol from the defendant in exchange for $20 in gas money, identified the pistol as the one he received from the defendant. The foregoing testimony constituted a sufficient predicate for the admission of the gun.
The purpose for establishing a chain of custody is to show that the evidence has not been tampered with. Smith v. State, 513 So.2d 1036 (Ala.Cr.App.1987). When the condition of the evidence is not at issue, however, it is not always necessary to establish a chain of custody. See Arrington v. State, 513 So.2d 40, 44 (Ala.Cr. App.1987) ("The establishment of the chain of custody ... would not have been material to the question of whether the items were the same items taken from defendant at the scene of the robbery."). See also Scott v. State, 409 So.2d 978 (Ala.Cr.App. 1981); Humphrey v. State, 370 So.2d 344, 348 (Ala.Cr.App.1979).
"It will be readily apparent that when real evidence is offered an adequate foundation for admission will require testimony first that the object offered is the object which was involved in the incident, and further that the condition of the object is substantially unchanged. If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition." McCormick on Evidence, § 212 at 667 (E. Cleary 3d ed. 1984) (emphasis in original).

IX
On appeal, defense counsel maintains that the trial court "erred in sentencing this defendant to three separate offenses for one act. He was convicted and sentenced for Burglary First Degree, Theft of Property First Degree and Theft of Property Second Degree." Brief of appellant at 12. Defense counsel never presented this argument to the trial court. However, in Ex parte Brannon, 547 So.2d 68 (Ala. 1989), our Supreme Court held that "[w]hen a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review."
However, the impropriety of the separate theft convictions was raised, though inartfully, in defendant's pro se "Motion to Squash [sic] Indictment." The motion alleged "an abuse of the power vested in [the] prosecutor ... shown by the multiple counts, charging each act as a separate offense ... in a common burglary ... where weapons, appliances, etc. are removed from an unoccupied dwelling." This motion was not "adopted" by defense counsel, and it was, therefore, considered "not of record as far as the [trial] Court is concerned."
The trial court's policy of disregarding defendant's pro se pleading unless specifically adopted by defense counsel is not generally subject to criticism. It appears to be supported by case law construing *330 Art. I, § 6, of the Alabama Constitution. "[I]n all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either." See Holloway v. State, 43 Ala.App. 153, 182 So.2d 906 (1965), cert. denied, Holloway v. State, 279 Ala. 688, 182 So.2d 910 (Ala.1966), wherein the Court of Appeals observed the following:
"Holloway cannot hunt with hares and hounds: either his lawyers prosecute his appeal or he does so alone. This court does not propose to expose itself to the conjunctivitis of having both client and counsel argue a case.... Peagler v. State, 110 Ala. 11, 20 So. 363 [1896]; Const.1901, § 6, first clause, `or either.'" Holloway at 155, 182 So.2d at 908.
While we do not condemn the trial court's policy, neither can we say that the issue of the invalidity of two theft convictions arising out of the same act was simply not preserved. Not only because of Ex parte Brannon, supra, but also as a matter of fundamental fairness and in the interest of judicial economy[2], we take notice of defendant's pro se pleading and reach the merits of the issue presented.
The defendant was improperly sentenced for both burglary and theft arising out of the same act. Gray v. State, 338 So.2d 444 (Ala.Cr.App.), cert. denied, 338 So.2d 445 (Ala.1976). Although § 15-3-8, Code of Alabama 1975, does not forbid double conviction for these offenses, it does forbid double punishment. Parker v. State, 516 So.2d 859 (Ala.Cr.App.1987). When the same criminal transaction supports both burglary and theft there can be but one punishment. Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963), cert. denied, 276 Ala. 708, 165 So.2d 403 (1964). "Whether this rule is served by a single sentence or concurrent sentences is a matter confided to the judge's discretion." Gray v. State, 338 So.2d at 445.
Moreover, the defendant was improperly convicted of both theft in the first degree and theft in the second degree. Ala.Code § 13A-1-8(b); Hurst v. State, 86 Ala. 604, 6 So. 120, 121 (1888); Connolly v. State, 539 So.2d 436, 441-43 (Ala.Cr.App. 1988). The State cannot convert a single theft of various items of property stolen from the same victim in the same burglary into separate offenses by alleging the theft of different items in separate counts of the indictment. Connolly v. State, 539 So.2d at 441-42.
It is clear that only one theft conviction was authorized here. Ala.Code § 13A-1-8(b)(1); Hurst v. State, supra; Connolly v. State, supra. Therefore, the trial court is directed to vacate one of the theft convictions. It is within the court's discretion which of the theft convictions will be vacated. See Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985).
The cause is remanded with directions that the circuit court set aside Pardue's conviction for first degree burglary and adjudge him guilty of burglary in the third degree. In addition, the court shall set aside either the conviction for first degree theft or the conviction for second degree theft. The circuit court may sentence the defendant for either (1) burglary in the third degree, or (2) burglary in the third degree plus one of the theft convictions (the other having been set aside), if the sentences are made concurrent.

X
The defendant was notified, in writing, during trial that the State intended to invoke the Habitual Felony Offender Act at sentencing. In that notice the State set out three prior felony convictions upon *331 which it intended to rely. Those prior convictions were listed as follows:
Mobile Circuit Court No. 29621Murder
Mobile Circuit Court No. 29622Murder
Mobile Circuit Court No. 29625Murder
At the sentencing hearing, the State introduced evidence of only one prior conviction, and that was Baldwin Circuit Court conviction, No. 6313, pursuant to a guilty plea in August, 1973, for murder. The district attorney offered no evidence of the three prior Mobile Circuit Court convictions for which the defendant had received notice. The prosecutor stated to the trial court that he had already introduced those prior felonies "at the trial." To the district attorney's contention, the trial court made the following response:
"THE COURT: As I say, I would have to go back and review the entire court file and get a complete or a portion of the transcript anyway to decide who is correct. But that can all be taken care of on motion for new trial and/or the appeal of the case.
"And so at this time I am going to go ahead and sentence under the Habitual Felony Act insofar as these other three convictions are concerned."
We have searched the transcript and we can find no offer by the State, much less an admission into evidence by the trial court, of the three Mobile convictions "at the trial." Certified minute entries of those convictions do appear in the clerk's record, but they are not identified as State's exhibits or labelled in any way as having been offered in evidence. Two of the minute entries, Nos. 29621 and 29622 reflected convictions for murder. The third, No. 29625, shows a grand larceny conviction. Each conviction was dated October 24, 1973, and was the result of a guilty plea by the 17-year-old defendant. The State contends that the defendant has four prior felony convictions: three for murder and one for grand larceny.
In effect, the State properly proved no prior felonies at sentencing. Based upon the record before this court, the convictions (from Mobile Circuit Court) of which defendant was given notice were not proved, or attempted to be proved at trial or at sentencing. For the conviction (from Baldwin Circuit Court) which was proved at sentencing, the defendant was not given notice.
Rule 6(b)(3)(i), A.R.Cr.P.Temp., states that the court "shall hold a hearing ... if such hearing is necessary in order to establish the alleged prior ... convictions in the record." A sentencing hearing was necessary in this case to "establish the alleged prior [Mobile] convictions in the record" because they had not been elsewhere "established." The fact that defendant's confession, admitted at trial, referred to his "doing time" for a murder in Mobile does not "establish," or prove, that conviction for sentencing purposes under the Habitual Felony Offender Act. See Webb v. State, 539 So.2d 343, 351-56 (Ala.Cr.App.1987). The admission of the defendant's wife on cross-examination by the prosecutor that he was "serving time" for murder and the admission on cross-examination by the prosecutor of an attorney who previously represented the defendant to the effect that the defendant had two convictions for murder and "some theft" do not constitute "judicial admissions" or waivers of proof for purposes of the Habitual Felony Offender Act. Webb, 539 So.2d at 355. Nor does the fact that the minute entries appear in the clerk's record, along with the district attorney's statement that he had proved them "at trial," supply the necessary proof of the prior convictions. Compare Sasser v. State, 494 So.2d 857, 859 (Ala.Cr.App.1986) (prosecutor's statement that "he had the `certifieds'"). "[T]he State must prove [a defendant's] record in order to trigger the the operation of the habitual offender sentencing provisions." Smith v. State, 471 So.2d 501, 503 (Ala.Cr. App.1984) (emphasis added). In this case, the record simply does not show that the State proved the convictions from Mobile County.
Since the State did not give the defendant notice of the Baldwin conviction, its proof of that conviction is unavailing. Pursuant to Ex parte Glover, 508 So.2d 218 (Ala.1987), and Ex parte Williams, 510 So.2d 135 (Ala.1987), the defendant's Baldwin *332 Circuit Court conviction may not be considered on resentencing. See Jackson v. State, 566 So.2d 752 (Ala.Cr.App.1987) (on return to remand) (although on remand for proper sentencing, court could consider improperly proved Choctaw County convictions of which accused had notice, it could not consider Washington County convictions of which accused had no notice).
Thus, upon defendant's resentencing for escape in the second degree, burglary in the third degree, and the one theft conviction left intact by the trial court, the State may attempt to prove those prior felonies of which the defendant had notice, but it may not seek to have defendant's sentence enhanced by a prior felony of which he did not have notice.
AFFIRMED ON COUNT ONE (escape in the second degree);
REVERSED AND REMANDED WITH INSTRUCTIONS ON COUNT TWO (burglary in the first degree);
REMANDED WITH INSTRUCTIONS TO VACATE ONE OF THE CONVICTIONS IN COUNTS THREE AND FOUR, AND TO RESENTENCE ACCORDINGLY.
TYSON and PATTERSON, JJ., concur.
McMILLAN, J., dissents as to Issue VI and concurs in result in remaining issues, with opinion, in which TAYLOR, P.J., joins.
McMILLAN, Judge, dissenting as to issue 6, and concurring in result only as to the remaining issues.
I disagree with the rule of law pertaining to burglary in the first degree adopted by this Court in Buchannon v. State, 554 So.2d 477 (Ala.Cr.App.1989), and must respectfully dissent from the majority's holding as to Issue Six.
Section 13A-7-5, Code of Alabama (1975), provides in pertinent part that:
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime ..." (Emphasis supplied).
As this Court noted in Henry v. State, 448 So.2d 432 (Ala.Cr.App.1983), "[t]he statutory phrases `while in dwelling' and `in immediate flight therefrom' anticipate those circumstances when the perpetrator of a crime arms himself during the course of the crime or while fleeing from the scene." Id. In Buchannon, supra, however, we held that a defendant who is unarmed at the beginning of a burglary but who steals a weapon during the course of the crime can only be convicted of burglary in the first degree if he later brandishes the weapon or if a more tragic result occurs.
From the plain language of Section 13A-7-5(a), I am led to believe that the legislature did not intend the phrase "armed with a deadly weapon" contained in Section 13A-7-5(a)(1) to require an analysis of the perpetrator's intended purpose at the time he became "armed." The appellant in this case had three prior murder convictions at the time the burglary occurred. There is little doubt in my mind that he regarded the pistol taken from the Holt residence as a "deadly weapon", and that he would have used it as such had the need arisen. This is precisely the result that the legislature intended to discourage by its language in Section 13A-7-5(a).
It is not necessary for this Court to go beyond the clear wording of this statute. By doing so, this Court has substituted its will for that of the legislature, and serves neither the spirit nor the letter of the law. Cf. Judge Taylor's dissenting opinion in Caine v. State, 453 So.2d 1081 (Ala.Cr.App. 1984).
NOTES
[1] The appeals were submitted on December 5, 1988, and were assigned to another judge on this court. The case was reassigned to Judge Bowen on September 22, 1989.
[2] Since the case is due to be remanded for other matters, it will serve the interest of judicial economy to vacate one of the theft convictions now, rather than at some later date upon the granting of a Petition under Rule 20, A.R.Cr.P. Temp. "This court will not deliberately invite a petition for post-conviction relief." Johnson v. State, 528 So.2d 1167, 1168 (Ala.Cr.App.1987). See McKinney v. State, 511 So.2d 220 (Ala.1987) ("clearly, advising a client to plead guilty to two charges when our jurisprudence dictates that only one such charge may be validly brought against him is a serious mistake. It falls below an objective standard of reasonableness [under Strickland v. Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984)]").